IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

ANTHONY OLDHAM,                  )
                                 )
        Plaintiff,                )       NO. 3:06-0945
                                 )        JUDGE HAYNES
v.                               )
                                 )
UNITED STATES POSTAL SERVICE     )
and JOHN E. POTTER,              )
POSTMASTER GENERAL,              )
                                 )
        Defendants.              )

**MEMORANDUM**

Plaintiff, Anthony Oldham, filed this action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq., against the Defendants: United States Postal Service and John E. Potter, Postmaster General, seeking overtime compensation. Plaintiff contends that during the time period relevant to this action, he was a non-exempt hourly employee of the Postal Service with a temporary supervisory assignment and later was a non-exempt hourly postmaster. Plaintiff seeks recovery for his unpaid overtime work as a non-exempt employee.

The Defendants filed an answer denying liability and the parties proceeded with discovery. Upon completion of discovery, the Defendants filed a motion for summary judgment that the Court denied based upon material factual disputes. (Docket Entry No. 146). This action was set for a bench trial on November 3-5, 2009, after which the parties were granted extensions of time to file proposed findings of fact and conclusions of law. (Docket Entry No. 82). Set forth below are the Court's findings of fact and conclusions of law.

**A. Findings of Fact**

In January 2003, Plaintiff, a postal clerk at the Madison, Tennessee post office was

assigned to the post office position in Lebanon, Tennessee as a "204B", a temporary supervisor, but Plaintiff's level remained an EAS 5 "clerk level". This temporary customer service position was rated at an EAS-17 level. A supervisor in customer service "[s]upervise[s] a group of employees in the delivery, collection, and distribution of mail, and in window service activities within a post office, station or branch, or detached unit." Defendants' Exhibit 3. The Postal Service employment manual defines a temporary assignment as follows:

> A *temporary assignment* is the placement of a career employee in another established position which is vacant or from which the incumbent is absent from duty, to perform duties and responsibilities other than those specifically set forth in the employee's position description, when the employee is not awarded the position on a regular basis.

Defendants' Exhibit 4 at Section 417.11.

Section 444.313 of the Defendant's employment manual addresses dual assignment and provides:

> Any employee who performs executive, administrative, or professional work, or any combination that meets the requirements of each exemption category, is considered exempt provided not more than: (a) 20 percent of the employee's total workhours in a service week are devoted to nonexempt work or (b) 50 percent of the employee's total workhours in a service week are devoted to nonexempt work and the employee is compensated at a rate of at least $250 a week or $13,000 per year.

Id. at Section 444.313.

Under Postal Service regulations, EAS level 17 supervisors are "special exempt," which is defined as:

> "[E]mployees in positions EAS-18 and below whose primary responsibility is the supervision of bargaining unit employees in a production operation. Special exempt employees do not receive overtime pay, but are eligible for additional straight time pay for hours that they work in addition to their normal schedule when they are authorized to work in excess of 8.5 hours on a scheduled or any

2

Case 3:06-cv-00945   Document 88   Filed 03/24/10   Page 2 of 11 PageID #: 1824

> time on an unscheduled day. Most frontline supervisory positions (e.g., Supervisor, Customer Services; Supervisor, Distribution Operations, etc.) are classified as special exempt."

Defendants' Exhibit 6, Handbook.

The Defendants paid Plaintiff at the higher level, EAS-Level 17, from January 2003 to June 28, 2004 except when Plaintiff was paid at EAS-19 or EAS-21 when he substituted for other supervisors. Defendants' Exhibit 1 and 2. Plaintiff's EAS-17 pay was $818.38 per week from January 1, 2003 to June 28, 2004. Plaintiff EAS-19 pay was $839.86 per week and the EAS-21 pay was $928.45 per week.

At the Lebanon post office, Plaintiff had the duties of a manager and did not perform any "clerk" work such as sorting mail or working at the window. As an EAS-17 supervisor, Plaintiff considered himself "management:"

> Q. Did you ever go to the union?
>
> A. You can't go to the union. You are in management. There is no management union.
>
> Q. But you were still a five, you base job was still a five?
>
> A. But you are doing 204B work. Your union does not deal with - they basically set down rules and say, you have a clerk issue, you file a clerk grievance. If you have a management issue, you have to go through management steps. I don't know what the management steps are other than you tell your boss and they are supposed to be I guess a resolution determined under EEOC or whatever.

(Docket Entry No. 35-2, Plaintiff's Deposition, at p. 83).

On January 24, 2004, while assigned to the Lebanon post office, Plaintiff became a Lebanon employee. From January 24, 2004 until the end of his time in Lebanon, Pam Higdon

entered Plaintiff's time, but on occasions, O'Guin and Judey Harrington also entered Plaintiff's time. These witnesses testified that they entered Plaintiff's time as Plaintiff reported it, including any overtime. Because Plaintiff was assigned the duties of a manager, a Postal Service memorandum required mandatory clocking in and out for non-exempt employees. Yet, according to Plaintiff, at the Lebanon post office, his supervisors, Tracy Mofield, the Lebanon postmaster, and Kelly Jordan, the station manager, told him not to clock in or out of work. From January 2003 through July 2004, Plaintiff asserts that he worked approximately 12 hours per day, six days per week.

Yet, Jordan testified that he instructed Plaintiff to arrive thirty minutes prior to the mail carriers who clocked in at 7:00 a.m. Jordan, the "late supervisor," arrived between 7:30 and 8:00 a.m. In Jordan's view, Plaintiff did not need to arrive any earlier than 6:30 a.m., as had Mike Pinkleton, Plaintiff's predecessor in that position. As the "early supervisor," Jordan described Plaintiff's work day ending at 3:30 p.m. that included an hour lunch. During this period, Plaintiff was the "late supervisor" when Byrum O'Guin served as the "early supervisor." As the "late supervisor," Plaintiff would not have to arrive until 7:30 or 8:00 a.m.

According to Jordan, Plaintiff did not have a time-card while he was at the Lebanon post office, but Jordan assumed Plaintiff was on "automatic rings," under which a time clock automatically records a starting time, a lunch break, and an ending time. Automatic rings is considered a perk for postal supervisors. If changes are needed to the automatic rings, such as recording of overtime hours, another supervisor logs the overtime with his user name and password. The "Employees Everything Report" identifies the supervisor who makes changes to an employee's time by displaying that supervisor's social security number with all digits redacted

4

except for the last four. See Defendants' Trial Exhibit 1. A supervisor is not allowed to change his automatic ring using his user name and password. A supervisor who knows the user name and password of a fellow supervisor and could make changes to his own time. Plaintiff does not dispute his pay at the Antioch facility, Plaintiff's work hours at that facility were entered manually by Plaintiff. Almost all of the automatic rings reports at Antioch reflect Jordan as making changes to the clock rings to give the Plaintiff overtime.

During this time, Plaintiff interviewed three times with Mona Mitchell, the USPS's Middle Tennessee's manager of postal office operations for postmaster positions in various post office branches in Tennessee, but was unsuccessful. In June 2004, Mitchell informed Plaintiff to report to the Antioch, Tennessee post office effective July 2004. At the Antioch facility, Carol Wood was his supervisor and Wood, Antioch's postmaster told Plaintiff that he must record his work on a timecard. As of August 10, 2004, the last four digits "9999" reflect that Plaintiff was on automatic clock rights. Wood was unaware of Plaintiff's excessive overtime and testified that his work did not justify such long hours.

In December 2004, in addition to his Antioch work, Plaintiff received a promotion to an EAS 13 position working as an hourly-paid employee at the Arrington, Tennessee post office. Beginning with the first pay period in 2005, which actually began December 25, 2004, the Defendants' timekeeping system changed. Until the Plaintiff left Antioch to become the Arrington Postmaster, the employee numbers on the Plaintiff's time records are Jordan's, Wood's and Lovingood's. Gary Pope, the Tennessee district's timekeeping manager, testified that Plaintiff's time was manually entered into the system with the last four digits of that person's social security number. In a word, Plaintiff self-reported additions to his time. Plaintiff was paid

5

for all overtime that he reported and/or entered into the system. Defendants' Exhibits 1 and 2. From October 4, 2003 until January 23, 2004, when Plaintiff was on assignment to Lebanon, Plaintiff remained a Madison employee and had to report his time to the Madison post office. For this time, the last four digits of three Madison supervisors on Plaintiff's "Employee Everything Report" are Dave Sutton, the postmaster, Bobby McCollum and John Huddleston. Sutton and McCollum testified that they did not enter any time for the Plaintiff and explained that Plaintiff had access to their user names and passwords. Huddleston did not recall entering Plaintiff's time, but if he did, he entered what Plaintiff reported to him. During this period, Plaintiff never complained of his pay.

While an EAS-17 supervisor at Lebanon, Jordan ate lunch with Plaintiff approximately 80% of the time and their lunch usually took two hours between 11:00 a.m. and 2:00 p.m. at the Annex. This period is "down time" because carriers are on the street and the Lebanon annex where Plaintiff works, does not have a customer window. Jordan usually left the Annex between 5:00 and 5:30 p.m., but Plaintiff would remain despite the fact that Plaintiff's work ended at 3:30 p.m. Jordan repeatedly told Plaintiff to go home, but Plaintiff would "hang around." During this period of time, Plaintiff did personal work, including work for his Madison lodge. Plaintiff explained to Jordan that his home life was unpleasant and he was not in a hurry to go home.

For his 12-14 hours of work a day at the Lebanon annex, Plaintiff cites his arrival as early at 4:00 a.m. and departure as late as 7:00 p.m. with an hour for lunch. Id. Of the clerks at the Lebanon annex, Larry Blackburn, Jimmy Wrye, Paul Russomanno, Dean Nuss, and Earl Vantrease testified that Plaintiff did not arrive any earlier than 6:00 a.m. and sometimes as late as 7:00 a.m. Charlie Robertson, who secured the Annex as the end of the day, testified that he and

the Plaintiff usually left the building together between 5:00 and 5:30 p.m. Beginning on June 28, 2004, Plaintiff stated that he worked at the Antioch post office as acting supervisor, a EAS-17 position.

On December 25, 2004, Plaintiff became postmaster at the Arrington post office. On January 26, 2005, Plaintiff started as Postmaster in Arrington, Tennessee. As Arrington's postmaster, Plaintiff reported his time to Pope in the Nashville office. Payroll records reflect that Plaintiff reported overtime for himself and was paid accordingly. See Defendant's Exhibits 1 and 3.

In February 2005, Mitchell told Plaintiff to work at the Franklin, Tennessee post office as well as the Arrington and Antioch offices. From January 26, 2005 to April 22, 2005, the Plaintiff was an EAS-15 Postmaster at the Arrington post office, a non-exempt position, but Plaintiff insists that the majority of his daily work hours were as Acting EAS-17 Supervisor at the Antioch or Franklin post office. According to Plaintiff, "even though I had been promoted [effective December 25, 2004], the wanted to hold me in the supervisor position in Antioch to train and bring up to speed the new supervisor coming in, plus it is a high time, Christmas time is bit time for the post office. . ." (Docket Entry No. 35-3, Plaintiff Deposition at pp. 106-107). Plaintiff's payroll records reveal that he was paid as an EAS-17, until January 26, 2005, when he became an EAS-17. See Defense Exhibit 2.

According to Plaintiff, Mitchell told Plaintiff to report to the Franklin office by 4:00 a.m. every morning Monday through Saturday. From approximately February 2005 until May 2005, Plaintiff testified that he arrived at the Franklin post office at approximately 4:00 a.m. each morning, Monday through Friday. According to Plaintiff, he performed his managerial duties

7

there until approximately 1:00 p.m. and would then travel to the Arrington post office where he worked until 4:00 p.m. Plaintiff testified that he then traveled to the Antioch post office to work until approximately 6:00 p.m. for a total of 84 hours per week for a six-day work week.

According to Plaintiff, Mitchell instructed him to continue at Antioch to assist with the "rural count," an accounting assessment to determine the rural carriers' wage rate. Mitchell, however, denied any such instruction. Carol Wood, Antioch's Postmaster, never saw Plaintiff at the Antioch post office after he assumed his duties at Arrington and did not authorize him to work at Antioch after January 26, 2005. Kevin Farmer, another supervisor, agreed.

Plaintiff's payroll records reflect Plaintiff's pay at an EAS-15 level from January 26, 2005 up until the second week of pay period 7, which began on March 26, 2006. For pay period 3, Plaintiff's first as a postmaster, Plaintiff reported four (4) hours of overtime. For pay period 4 (February 5-18, 2004), Plaintiff turned in four (4) hours of overtime. For pay period 5 (February 19 to March 4, 2005), he turned in eight (8) hours of overtime for each of the two weeks, for a total of 16 hours. For Pay Period 6 (March 5 to March 18, 2005), he turned in eight (8) hours of overtime the first week and 10 hours of overtime the second week, for a total of 18 hours. For the first week of Pay Period 7, he turned in two hours of overtime and eight (8) hours of annual leave. These records establish that Plaintiff was paid for any overtime. Plaintiff insists that his temporary supervisor duties at the Arrington post office ended in March 2005, but by March 14, 2005 he worked as a temporary supervisor at the Franklin post office in addition to his Arrington post office duties. According to Plaintiff, his Franklin work was as a supervisor in Antioch for ten to twelve hours daily. <u>Id.</u> Plaintiff estimated his work at approximately five to six hours at the Franklin facility and three to six hours at Arrington.

8

The "Employee Everything Reports" reflect that at the Lebanon post office, Plaintiff received the higher level pay for EAS-17 overtime under the collective bargaining agreement for postal workers ("CBA"). Defendants' Exhibit 1. Plaintiff cites the "FLSA" designation on his "Employee Everything Reports" reflects an "N" on "non-exempt," and explains that this designation refers to Plaintiff's base level position.

On April 22, 2005, Plaintiff was relieved of his duties as a USPS employee after Postal Inspectors interviewed him for among other things, issuing money orders to himself and not immediately remitting payment. Plaintiff told Postal Inspectors that he only worked at the Arrington Post Office one day a week. After April 22, 2005, Plaintiff was placed on administrative leave with pay, but did not return to work for the Defendant. Plaintiff's employment was terminated with the Defendant in July 2005. Between this time, the Defendant paid Plaintiff for forty hours of work each week at EAS-15 level. See Defense Exhibit 2.

The Defendants contends Plaintiff's remedy is under the CBA that has a grievance procedure, but Plaintiff failed to pursue that remedy. Robin Stewart, the USPS's area accounting manager for the southeast region, explained that whether a postal employee is exempt or non-exempt under the FLSA is based on the worker's actual tasks. A non-exempt clerk employee, such as the Plaintiff, who performs exempt tasks under the FLSA and works more than 40 hours a week is not entitled to overtime. A non-exempt employee performing exempt work may be eligible for overtime under the USPS's collective bargaining agreement ("CBA") with the postal workers union. Under the CBA, craft employees working at higher level job or exempt positions remained entitled to overtime. An EAS-17 supervisor is considered exempt under Postal categories. Id.

Plaintiff received the same salary as an EAS-17 while performing those duties, Defendants' Exhibit 2, but that salary is converted to an hourly rate for USPS pay purposes.

The USPS personnel handbook defines "Postal overtime [as] compensation paid to eligible personnel at 150 percent of each employee's basic hourly rate for actual work hours in excess of 9 paid hours in a day, 40 paid hours in a service week, or if a full-time bargaining unit employee, on a non-scheduled day." Defendants Exhibit 4 at Section 434.131. The USPS have a penalty overtime *i.e.*, "compensation paid to eligible personnel at two times the employee's basic hourly straight time rate for hours described in applicable labor agreements. Id., Section 434.133. For example, penalty overtime would kick in after an employee works in excess of ten hours per day. If an employee worked eleven hours in one day, that employee would thus receive 2 hours of overtime at 150 percent of his regularly hourly rate and one hour penalty overtime at 200 percent of his regularly hourly rate. Under the CBA an employee could be eligible to postal overtime pay that the FLSA does not require. Plaintiff received overtime pay while at the USPS. Defendants' Exhibit 2, Payroll Journal. As a non-exempt level 5 clerk, Plaintiff was entitled to postal overtime while working higher level positions. Plaintiff, however, asserts he was not paid for all overtime.

### B. Conclusions of Law

The legal issue is whether Plaintiff is entitled to overtime under 28 U.S.C. § 207(a) of FLSA's overtime provisions under 28 U.S.C. § 213 (a)(l). The Court finds by a preponderance of evidence for the alleged overtime for which Plaintiff was not compensated that Plaintiff did not work the overtime hours for which he seeks recovery. The Court concludes that Plaintiff entered his own time for the unauthorized overtime and the evidence establishes that Plaintiff was

actually performing personal activities or did not perform postal work or was not authorized to incur this overtime work. See Wood v. Mid-America Management Corp., 2006 WL 2188706 at *3 (6th Cir. 2006).

Accordingly, Plaintiff's claims for overtime work under the FLSA should be denied and this action should be dismissed.

An appropriate Order is filed herewith.

**ENTERED** this the 23rd day of March, 2010.

WILLIAM J. HAYNES, JR.
United States District Judge